609 So.2d 982 (1992)
In re MEDICAL REVIEW PANEL OF Anna Duhon BECHET and Glenn Dale Bechet.
Anna Duhon BECHET and Glenn Dale Bechet, Jr.,
v.
HEALTHTRUST, INC.THE HOSPITAL COMPANY, d/b/a Lakeside Hospital, Hospital Corporation of America, d/b/a Lakeside Hospital, and Medical Center of Baton Rouge, Inc., d/b/a Lakeside Hospital, and Lisa Richert.
Nos. 92-C-2365, 92-C-2479.
Court of Appeal of Louisiana, Fourth Circuit.
November 24, 1992.
Writ Granted in Part with Order/Denied in Part February 5, 1993.
Lawrence L. McNamara, Cristina R. Wheat, Adams & Reese, New Orleans, for relators, Walton L. Shaffer, M.D. and Browne-McHardy Clinic.
Robert H. Matthews, Jacques F. Bezou, DeRussy, Bezou & Matthews, and Robert E. Arceneaux, Gail N. Wise, Kathy S. Austin, Barham & Arceneaux, New Orleans, for respondents, Anna Duhon Bechet and Glenn Dale Bechet, Jr.
Deborah Cunningham Foshee, Kathy Manchester Borbas, Gordon, Arata, McCollam & Duplantis, New Orleans, for relators, Drs. Robert Eddington and Jeanne F. Eddington.
Before KLEES, BYRNES and WALTZER, JJ.
BYRNES, Judge.
Considering that writ application numbers 92-C-2365 and 92-C-2479 merely involve *983 different defendants in the same case, each raising the same objection to venue, we have consolidated them.
Plaintiffs Anna and Glen Bechet filed suit in Orleans Parish for alleged injury arising out of the failure of Dr. Robert Eddington and Dr. Jeanne F. Eddington and their co-defendants to note the fact that Mrs. Bechet has RH negative blood and the consequent failure of the defendants to administer RhoGam within 72 hours after the birth of Mrs. Bechet's Rh positive baby.
Mrs. Bechet was discharged from the defendant, Lakeside Hospital 48 hours after the birth of the baby whence she returned to her home on January 3, 1988.
Mrs. Bechet alleges that the failure of defendants to administer RhoGam to her in 1988 resulting in her sensitization to the Rh factor forced her to undergo numerous diagnostic tests and procedures when she became pregnant again in 1989. She also alleges past mental anguish arising out of an understandable concern for the unborn child and herself (the child, born on June 21, 1990 appears to be developing normally) as well as ongoing and future mental anguish for fear of complications that could occur with any future pregnancy. Plaintiffs allege a desire to have more children.
Defendants dispute the damages but admit the failure to administer RhoGam in Jefferson Parish.
None of the individual defendants in a domiciliary of Orleans Parish and none of the corporate defendants is located in Orleans Parish. Therefore, venue is not proper in Orleans parish under LSA-C.C.P. art. 42.
The "wrongful conduct" complained of took place in Jefferson Parish. The fact that Mrs. Bechet was in Orleans Parish when the failure of Drs. Eddington to de-sensitize her to the Rh factor became irreversible does not mean that the "wrongful conduct" occurred in Orleans Parish. It occurred in Jefferson Parish where the Eddingtons attended Mrs. Bechet, and where the Eddingtons failed to prescribe Rhogam. However, plaintiffs contend that venue is proper in Orleans Parish, "the parish where the damages were sustained." LSA-C.C.P. art. 74. This contention is based on the fact that Mrs. Bechet returned to Orleans Parish within 48 hours of the birth that caused her Rh factor problem, and sensitization to that factor allegedly does not begin until 72 hours after birth, i.e., after she had returned to Orleans Parish.
Belser v. St. Paul Fire & Marine Ins., 509 So.2d 12 (La.App. 1 Cir.1987) contains an excellent survey of venue cases turning on the issue of "where damages were sustained" under LSA-C.C.P. art. 74. The Belser court reached two conclusions:
The common thread that runs through the Coursey-Foster-King-Lapeyrouse line of cases is that, if any damage is caused to the plaintiff in the parish where the wrongful conduct occurred, that parish and no other is "the parish where the damages were sustained" for purposes of Article 74. This holding is consistent with the jurisprudence that Article 74 must be strictly construed. This holding evidences public policy determinations by the Coursey-Foster-King-Williams-Lapeyrouse courts that forum shopping should be minimized in actions for the recovery of damages for offenses and quasi offenses. [509 So.2d at pp. 18-19].
* * * * * *
The common thread running through the Broussard-Hunter-Reeves-Thibodeaux line of cases in that where no damage is caused to the plaintiff in the parish where the wrongful conduct occurred, a parish where the damages were sustained is the proper venue. [509 So.2d at 20].
An analysis of both lines of cases cited in Belser and Belser itself reveals one common thread, not two. Damages are "sustained" as the result of wrongful conduct in that parish where they first arise or, in the case of bodily injury, where the conditions have been set in motion within the body which will eventually evolve into the injury or damage complained of.
*984 Sensitization to the Rh factor may not have commenced until 72 hours after the birth of Mrs. Bechet's child in 1988, and defendants may have been able to prevent that from happening for up to 72 hours after that birth. But the defendants had already failed to note the problem on Mrs. Bechet's chart prior to the birth, and as a result of that failure, failed at the time of the birth to administer RhoGam prior to discharging Mrs. Bechet from the hospital in Jefferson Parish. These failures coupled with the physical conditions created in Mrs. Bechet's body by the birth of the baby in Jefferson Parish evolved organically, inevitably, and without interruption into Rh factor sensitization which is the essence of plaintiff's complaint.
"[LSA-C.C.P. art. 74] is an exception to the general rule of venue which requires that a person domiciled in this state be sued at his domicile. LSA-C.C.P. article 42(1). If a plaintiff attempts to claim the benefit of an exception to the general rule enunciated in Article 42, he must bring himself clearly within the exception." Duhon v. Lafayette General Hospital, 286 So.2d 166, 169 (La.App. 3 Cir.1973).
Plaintiffs have failed to bring themselves "clearly within the exception."
We recognize that LSA-C.C.P. art. 74 was intended to expand the venue options provided by the general venue provisions found in LSA-C.C.P. art. 42. However, LSA-C.C.P. art. 74 does not refer to "a" or "any" parish. It refers to "the" parish thereby expressing the legislative intent that only one parish of damage was contemplated, not several.[1] See: Revolta v. Regional Transit Authority, 607 So.2d 963 (La.App. 4 Cir., No. 92-C-1338, Oct. 29, 1992).
We find that Jefferson Parish is the parish where the wrongful conduct occurred and where the alleged damages were sustained. Venue is not proper in Orleans Parish.
When an action is brought in a court of improper venue, an appellate court has the discretion to dismiss the action or, in the interest of justice, transfer it to a court of proper venue. LSA-C.C.P. art. 121; Belser, 509 So.2d at p. 20; Lapeyrouse v. United Services Automobile Association, 503 So.2d 627 (La.App. 4 Cir.1987). We elect to transfer this case to a proper venue.

DECREE
For the foregoing reasons, the judgment of the trial court overruling the declinatory exception of venue is reversed, and judgment is entered herein sustaining the exception and remanding this entire action including all defendants to the Twenty-Fourth Judicial District Court, Parish of Jefferson, for further proceedings. The clerk of this court is ordered to transfer the record of these proceedings to the Clerk of Court for the Parish of Jefferson for filing.
REVERSED AND REMANDED.
NOTES
[1] That we might reach a different result were this a "continuous tort" is not inconsistent with our interpretation of LSA-C.C.P. art. 74 in the instant case. A "continuous tort" involves a different fact situation where "the tortious conduct and the resulting damages continue." South Central Bell Telephone v. Texaco, Inc., 418 So.2d 531, 533 (La.1982). This might provide a reasonable basis for multi-parish venue. Crockett v. Crockett, 588 So.2d 1230, 1234 (La.App. 1991). However, the Bechets do not allege a continuous tort, and we express no opinion on how we would rule if they had.